**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION**

| | |
|---|---|
| JOHNNY WELLS, | |
| Plaintiff, | Case No. 3:17-cv-50087 |
| v. | Honorable Iain D. Johnston |
| BESSIE DOMINGUEZ, MD, AMBER ALLEN, CATHY SMITH, DONALD ENLOE, WEXFORD HEALTH SOURCES INCORPORATED, and JOHN BALDWIN, | |
| Defendants. | |

**MEMORANDUM OPINION AND ORDER**

Johnny Wells, a prisoner at Dixon Correctional Center (Dixon), brings this action against Wexford Health Sources Incorporated (Wexford), Doctor Bessie Dominguez, (Dominguez), Cathy Smith (Smith), and three individuals who were employed by the Illinois Department of Corrections (IDOC) – IDOC Acting Director John Baldwin (Baldwin), Acting Warden of Dixon Donald Enloe (Enloe), and Dixon Health Care Unit Administrator Amber Allen (Allen), alleging claims under 42 U.S.C. § 1983 and a breach of contract claim under Illinois law. Third Am. Compl., Dkt. 106

Before the Court is Wexford, Dominguez, and Smith's motion for summary judgment (collectively, "the Wexford Defendants") and Baldwin, Enloe, and Allen's motion for summary judgment (collectively, "the Illinois Defendants"). For the following reasons, all motions are granted.

1

## 1. BACKGROUND[1]

Plaintiff is an inmate in the custody of the IDOC, currently incarcerated at Dixon. Wex. D. SOF ¶ 1, Dkt. 199. Defendants Dominguez and Smith were previously employed by Wexford at Dixon. *Id.* ¶¶ 2, 3. Doctor Dominguez was a medical doctor at Dixon, and Defendant Smith was a scheduler in the writ office at Dixon. *Id.* Wexford is contracted with the IDOC to provide medical care and treatment to inmates throughout Illinois, including inmates at Dixon. *Id.* ¶ 4. Defendant Baldwin was the Acting Director of the IDOC from August 2015 until May 2019. Ill. D. SOF ¶ 1, Dkt. 199. Defendant Enloe was the Acting Warden of Dixon from 2014 until 2016. *Id.* ¶ 3. Defendant Allen was the Health Care Unit Administrator at Dixon from April 2010 to December 2012, and from June 2015 to January 2021. *Id.* ¶ 4.

In the Spring of 2012, Plaintiff had an appointment with Dr. Dominguez and complained of joint pain in numerous areas of his body, including his right shoulder. Wex. D. SOF ¶ 7. Plaintiff was not sure why he had joint pains but thought his shoulder pain could be from playing sports, because at that time Plaintiff was playing "everything" including basketball, baseball, handball, football, racquetball, and bocce. *Id.* ¶ 7. Dr. Dominguez also learned from Plaintiff that before his incarceration, Plaintiff dislocated his right shoulder around 1982 when he jumped from a moving train and dislocated his right shoulder again around 1990. *Id.* ¶¶ 5–

---

[1] The following facts are undisputed except where noted. Plaintiff frequently fails to respond properly to Defendant's Local Rule 56.1 statement of facts, according to this Court's standing order, those facts are deemed admitted. Iain D. Johnston, Standing order on Summary Judgment Motions, https://www.ilnd.uscourts.gov/judge-info.aspx?Bt1LmR2QgBbCj2VD6w9tXA==

6. After both dislocations, Plaintiff did not have any follow-up treatment. *Id.* Dr. Dominguez ordered x-rays images to assist her in diagnosing the source of Plaintiff's shoulder pain. *Id.* ¶ 9. In a follow-up visit in May 2012, Dr. Dominguez advised Plaintiff that osteoarthritis was the likely cause of his right shoulder pain, and it would be an issue for him for the rest of his life. P. SOF ¶ 2, Dkt. 212. As a treatment for the osteoarthritis, Dr. Dominguez prescribed Plaintiff a low bunk permit for one-year, anti-inflammatory medication, and stretching exercises to help with his joint pain. Wex. D. SOF ¶ 13. Approximately one-year later, Dr. Dominguez saw Plaintiff at a chronic cardiac clinic for treatment of health issues unrelated to his joint pains but noted that Plaintiff may have rotator cuff impingement syndrome. *Id.* ¶ 17. Dr. Dominguez believed that further diagnostic imaging, including an MRI or EMG was not necessary at that time. *Id.* ¶ 19.

Between 2014 and 2015, Plaintiff saw Dr. Dominguez four more times, who noted that Plaintiff suffered from chronic joint pains, had muscle atrophy in his right shoulder, and continued to prescribe anti-inflammatory medication as a treatment. *Id.* ¶¶ 21, 22, 26, 32. In August 2015, Plaintiff re-aggravated his right shoulder during a handball game. In addition to the anti-inflammatory medication, Dr. Dominguez referred Plaintiff to physical therapy, recommended Plaintiff scale back the intensity of his weightlifting, and ordered further x-rays of his right shoulder. *Id.* ¶¶ 26, 29–30. Plaintiff was then referred to the prison's Medical Director, Dr. Chamberlain, to examine his shoulder and consider further diagnostic tools. *Id.* ¶ 33. In late 2015, Dr. Chamberlain ordered an MRI and EMG of

Plaintiff's right shoulder, which showed a rotator cuff tear in Plaintiff's shoulder. *Id.* ¶ 42. Dr. Chamberlain then referred Plaintiff to see an orthopedic surgeon, who after examining Plaintiff's shoulder believed that there was nothing that could be done for his shoulder and noted that Plaintiff had an equal range of motion in his shoulder with "good strength." *Id.* ¶ 45. Between February and April of 2016, Plaintiff filed three grievances complaining about the medical treatment he received on his right shoulder, complaining that he "wasn't getting any type of treatment" and wanted to see an offsite specialist. Wells Dep. 83:10-15, Dkt. 199-2. On February 1, 2016, Plaintiff had a follow-up appointment with Dr. Chamberlain, who in addition to offering Plaintiff a steroid injection for the shoulder pain, referred Plaintiff to another orthopedic department, this time at UIC hospital. *Id.* ¶ 47. Seven months later, in September 2016, Plaintiff had his appointment with an orthopedic specialist at UIC. *Id.* ¶ 52. At UIC's request, Plaintiff received another MRI of the right shoulder. *Id.* ¶ 54. The MRI showed that Plaintiff's shoulder conditions had not changed, and Plaintiff was prescribed further physical therapy. *Id.* ¶¶ 57, 59.

In April 2017, Plaintiff returned to UIC to have surgery on his torn rotator cuff tendon. *Id.* ¶ 60. Before the surgery began Plaintiff had a cardiac reaction to the anesthesia, causing the surgeon to stop the procedure for Plaintiff's safety. *Id.* Plaintiff was taken into the intensive care unit at UIC and while hospitalized had another cardiac episode. *Id.* ¶ 61. Plaintiff then saw a cardiologist who cleared him for surgery, without using anesthesia. *Id.* Despite being cleared by the cardiologist,

Plaintiff's orthopedic surgeon refused to perform the surgery on him because the surgeon felt the risk of rotator cuff repair was too great, and Plaintiff was no longer a surgical candidate because of his heart conditions that increased his risk of dying. *Id.* ¶ 63.

## 2. LEGAL STANDARD

A successful motion for summary judgment demonstrates that there is no genuine dispute of material fact and judgment is proper as a matter of law. A party opposing summary judgment must proffer specific evidence to show a genuine dispute of fact for trial. FED. R. CIV. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A genuine dispute of material fact exists if a reasonable jury could return a verdict for the non–movant when viewing the record and all reasonable inferences drawn from it in the light most favorable to the non–movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). However, the existence of just *any* disputed facts will not defeat an otherwise proper motion for summary judgment. *Borcky v. Maytag Corp.*, 248 F.3d 691, 695 (7th Cir. 2001). Rather, the disputed facts must be both "genuine" and "material." *Id.* A fact is material if it might affect the outcome of the suit under governing law. *Id.* Summary judgment is appropriate only when the court determines that "no jury could reasonably find in the nonmoving party's favor." *Blasius v. Angel Auto, Inc.*, 839 F.3d 639, 644 (7th Cir. 2016).

A party opposing summary judgment "is entitled to the benefit of all favorable inferences that can reasonably be drawn from the underlying facts, but not every conceivable inference." *De Valk Lincoln Mercury, Inc. v. Ford Motor Co.*,

811 F.2d 326, 329 (7th Cir. 1987). The court must construe the "evidence and all reasonable inferences in favor of the party against whom the motion under consideration is made." *Rickher v. Home Depot, Inc.*, 535 F.3d 661, 664 (7th Cir. 2008). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380–81 (2007). But mere speculation or conjecture will not defeat a summary judgment motion. *Boston v. U.S. Steel Corp.*, 816 F.3d 455, 466 (7th Cir. 2016). If the nonmoving party fails to establish the existence of an element essential to his case, summary judgment must be granted for the moving party. *Ortiz v. John O. Butler Co.*, 94 F.3d 1121, 1124 (7th Cir. 1996); *Brazkinski v. Amoco Petroleum Additives Co.*, 6 F.3d 1176, 1183 (7th Cir. 1993) (the moving party "can prevail just by showing that the other party has no evidence on an issue on which that party has the burden of proof.")

## 3. ANALYSIS

Plaintiff Johnny Wells brings claims under § 1983 against the Illinois Defendants and the Wexford Defendants in their individual capacities, alleging they were deliberately indifference to his serious medical needs in violation of his Eighth and Fourteenth Amendment rights, and a breach of contract claim against Wexford under Illinois law. Third Am. Compl., Dkt. 106. The Illinois Defendants seek summary judgment arguing that they did not violate Plaintiff's constitutional rights because none of them were personally involved in or had knowledge of Plaintiff's

6

medical conditions, care, or treatment decisions. Ill. D. Mem. in Supp. Sum. Judg., Dkt. 200. The Wexford Defendants seek summary judgment arguing that Plaintiff fails to present sufficient evidence to show that Dr. Dominguez was deliberately indifferent to Plaintiff's medical needs, and Plaintiff fails to present any evidence that Defendant Smith delayed or hampered the scheduling of Plaintiff's medical appointments, and finally Wexford argues that there is no evidence to support a *Monell* claim against Wexford. Wex. D. Mem. Supp. Sum. Judg., Dkt. 195. at 1. Wexford also argues that the third-party breach of contract claim should be dismissed with prejudice because Plaintiff is not a third-party beneficiary under the IDOC-Wexford contract and therefore does not have standing. *Id.* at 17.

## A. § 1983 Claims

The Eighth Amendment prohibits deliberate indifference to a prisoner's serious medical needs. *Machicote v. Roethlisberger*, 969 F.3d 822, 827 (7th Cir. 2020) (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). A plaintiff must show evidence of a serious medical need, and that the defendant was subjectively aware of the specific, serious medical need or risk, and disregarded it by "failing to take reasonable measures to abate it." *Farmer v. Brennan*, 511 U.S. 825, 834, 47 (1994).

A prison official acts with deliberate indifference only when he "*actually* [knows] of a substantial risk of harm." *Brown v. Osmundson*, 38 F.4th 545, 550 (7th Cir. 2022) (quoting *Dean v. Wexford Health Sources, Inc.*, 18 F.4th 214, 241 (7th Cir. 2021)). This is a high bar, "because it requires a showing [of] something approaching a total unconcern for the prisoner's welfare in the face of serious risks."

*Rasho v. Jeffreys*, 22 F.4th 703, 710 (7th Cir. 2022) (quoting *Rosario v. Brown*, 670 F.3d 816, 821 (7th Cir. 2012)). Negligence, gross negligence, or even tortuous recklessness is not enough. *Petties v. Carter*, 836 F.3d 722, 728 (7th Cir. 2016). Medical malpractice, and merely disagreeing with a doctor's medical judgment does not amount to deliberate indifference. *Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008). The Constitution does not prescribe any specific course of treatment. *Id.* at 697. However, if a prison doctor chooses "an easier and less efficacious treatment without exercising professional judgment, such a decision can also constitute deliberate indifference." *Petties*, 836 F.3d at 720 (quoting *Estelle*, 429 U.S. at 104 n.10)). "But where the evidence shows that a decision was based on medical judgment, a jury may not find deliberate indifference, even if other professionals would have handled the situation differently." *Dean*, 18 F.4th at 241; *Petties*, 836 F.3d at 729 ("[E]vidence that *some* medical professionals would have chosen a different course of treatment is insufficient to make out a constitutional claim.")

## I. Illinois Defendants

### Defendants Baldwin and Enloe

Baldwin and Enloe argue they are entitled to summary judgment because there is no evidence showing that either was personally aware or involved in Plaintiff's medical care. Ill. D. Mot. Supp. Sum. Judg., Dkt. 200 at 5. Plaintiff argues Baldwin and Enloe were aware of his serious medical condition because he made formal grievances, and they were personally obligated to review inmate grievances and make final determinations on medical treatment of inmates.

Plaintiff admits that this claim is premised on Defendant Baldwin and Enloe's positions within IDOC and Dixon, respectively acting director of the IDOC and the acting warden of Dixon. Ill. D. SOF ¶¶ 8, 18, 24, 32. He also admits that neither defendant was involved in his medical care. *Id.* Further, it is undisputed that neither Baldwin nor Enloe have ever met Plaintiff or personally reviewed any of his grievances or other communications. Ill. D. SOF ¶¶ 22, 35. Taken together, these admissions and undisputed facts are fatal Plaintiff's § 1983 claim because it is direct evidence that Defendants were not personally responsible for any alleged constitutional violation. *Kuhn v. Goodlow*, 678 F.3d 552, 555–56 (7th Cir. 2012) (it is well settled that liability under § 1983 is based "on the wrongdoer's personal responsibility."); *Rasho*, 856 F.3d at 478, (to hold an individual defendant liable under § 1983 "the inmate must show that the defendant was personally responsible for that violation.")

Plaintiff also argues that Defendants Baldwin and Enloe are imputed with actual knowledge of their subordinates and are responsible for the acts and omissions of their subordinates. This argument has no legal basis. It is well established law that a defendant cannot be liable under § 1983 based on a theory of *respondeat superior. Maniscalco v. Simon*, 712 F.3d 1139, 1145–46 (7th Cir. 2013). And the Seventh Circuit has reiterated that "the constitution does not make supervisory office holders vicariously liable for the acts and omissions of their subordinates." *Walker v. Rowe*, 791 F.2d 507, 508 (7th Cir. 1986). Without more evidence, Defendants Baldwin and Enloe cannot be liable based solely on their

9

supervisory role. *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995). For these reasons, Defendants Baldwin and Enloe's motion for summary judgment is granted.

**Defendant Allen**

Plaintiff asserts that as the Dixon Health Care Unit Administrator, Defendant Allen is liable for the alleged constitutionally inadequate medical care he received in Dixon. Plaintiff argues that Defendant Allen was deliberately indifferent to his medical needs because she had multiple opportunities to become aware of his need for proper medical care. According to Plaintiff, he sent her a letter and filed multiple grievances, and she nonetheless did take an active interest in his case. D. Mem. Opp. Ill. Sum. Judg., Dkt. 219 at 12. Defendant Allen argues that this is insufficient evidence to show that she was deliberately indifferent to Plaintiff's medical needs.

Plaintiff's claim against Defendant Allen fails in two ways. First, taking the facts in the light most favorable to Plaintiff, that Defendant Allen failed to investigate the complaints Plaintiff made in his letter and grievances is at worst negligence, which does not amount to deliberate indifference. *Petties*, 836 F.3d 728 (negligence is not enough to show deliberate indifference); *McGill v. Duckworth*, 944 F.2d 344, 347 (7th Cir. 1991) (a prisoner must show that an official acted with "the functional equivalent of wanting to harm to come to the prisoner.")

Plaintiff's claim also fails because Defendant Allen was employed solely in an administrative capacity. Ill. D. SOF, ¶ 39. And Plaintiff admits that Defendant Allen never personally provided him any medical care or treatment. Ill. D. SOF,

10

¶ 44. As a non-medical administrator, Plaintiff admits that Defendant Allen did not ignore, interfere with, or delay surgery or any other of his treatments, so Defendant Allen was entitled to defer to the judgment of jail health professionals. Ill. D. SOF, ¶ 43. *Berry v. Peterman*, 604 F.3d 435, 440 (7th Cir. 2010); *Spruill v. Gillis*, 372 F.3d 218, 236 (7th Cir. 2004) (non-medical official can rely on the belief that a prisoner is in capable hands when under the care of medical experts). For these reasons, summary judgment is granted for Defendant Allen.

## II. Wexford Defendants

### Dr. Dominguez

Plaintiff's claim against Dr. Dominguez involve Dr. Dominguez's decision to use an x-ray machine to diagnose the source of Plaintiff's right shoulder pain. Plaintiff contends that this diagnostic decision was inadequate and is evidence that Dr. Dominguez breached her professional obligations because he believes he should have had an MRI exam on his right shoulder. Plaintiff argues that because Dr. Dominguez did not order an MRI, she caused him to needlessly suffer ongoing pain, resulting in a loss of mobility and strength in his right arm. Third. Am. Compl. ¶¶ 41–43. He also complains that he should have had an orthopedic consult much sooner than he did. *Id.* ¶ 38.

Defendants do not dispute that Plaintiff suffered an objectively serious medical condition, so the Court will assume that Plaintiff's shoulder pain is an objectively serious medical condition. *See Pyles v. Fahim*, 771 F.3d 403, 411 (7th Cir. 2014). That leaves the Court to determine whether a rational jury could

conclude that Dr. Dominguez was deliberately indifferent to Plaintiff's shoulder problems by not ordering an MRI or referring Plaintiff to a specialist sooner than she did.

For a claim of deliberate indifference against a medical professional, a prisoner must demonstrate that the medical professional's response was so inadequate that it shows a lack of professional judgment. *White v. Woods*, 48 F.4th 853, 862 (7th Cir. 2022). But a doctor's choice among different types of diagnostic tests is a "classic example of a matter for medical judgment." *Dean*, 18 F.4th at 242 (quoting *Estelle*, 429 U.S. at 107). Further, a medical decision not to order a specific diagnostic test does not represent cruel and unusual punishment, it is at most medical malpractice. *See Estelle*, 429 U.S. at 107; *and see Pyles*, 771 F.3d at 411.

The record shows that Dr. Dominguez did not ignore Plaintiff's pain, but instead took a conservative approach and treated him for arthritis. Dr. Dominguez argues that her treatment approach to Plaintiff's shoulder pain was based upon learning that Plaintiff dislocated his shoulder twice, decades before his incarceration. Wex. D. SOF ¶¶ 5–6. And she took into consideration Plaintiff's pain levels, his range of motion, that he was regularly exercising, and was playing almost every sport available to him at Dixon. *Id.* ¶ 29. After believing that Plaintiff had arthritis, Dr. Dominguez prescribed him anti-inflammatory medication, physical therapy, entered a low bunk permit, and took x-rays of Plaintiff's shoulder. Just because Plaintiff disagrees with Dr. Dominguez's conservative treatment plan, does not mean there is a constitutional violation and there is no evidence to show

that she chose this plan simply because it was an easier course of treatment without regard for Plaintiff's specific medical needs. *Jackson*, 541 F.3d at 697; *Petties*, 836 F.3d at 720.

Plaintiff also argues that Dr. Dominguez was deliberately indifferent to his medical needs because she "rebuffed all his efforts to seek an MRI examination." But Dr. Dominguez's decision to order x-rays and refrain from ordering an MRI or further imaging, was based on her medical judgment. She felt that the x-ray results and Plaintiff's medical history did not require further diagnostic efforts. Wex. D. SOF ¶¶ 19, 29. Because her treatment plan was based on her medical judgment, a reasonable jury cannot say that she was deliberately indifferent to Plaintiff's shoulder injury. *Dean*, 18 F.4th at 242 (doctor's choice of a diagnostic test is a matter for medical judgment); *Ray v. Wexford Health Sources, Inc.*, 706 F.3d 864, 866 (7th Cir. 2013) (a doctor's refusal to give an inmate an MRI was not deliberately indifferent when the doctor did not believe the test would help in treatment— inmate was given frequent exams, x-rays, painkillers, and a lower bunk order.); *See Estelle*, 429 U.S. at 107; *and see Pyles*, 771 F.3d at 411 (a doctor's decision not to order a specific diagnostic test does not represent cruel and unusual punishment, it is at most medical malpractice.)

Although it turned out that the cause of Plaintiff's shoulder pain was a torn rotator cuff and not arthritis, Dr. Dominguez's misdiagnosis is still not enough to show that she was deliberately indifferent. *Petties*, 836 F.3d at 728 (negligence or gross negligence is not deliberate indifference); *Jackson*, 541 F.3d at 697 (medical

malpractice does not mean the treating physician was deliberately indifferent). Plaintiff claims that Dr. Dominguez's conservative treatment plan was so inadequate that it showed Dr. Dominguez lacked professional judgment and deviated from the standard of practice. In support of this claim he points to the deposition testimony of his opinion witness, and evidence that other doctors took a treatment and diagnosis approach that was different from Dr. Dominguez. But this is not enough to establish liability under the Eighth Amendment and find that she deviated from the proper standard of care or pursued an inadequate treatment. *White*, 48 F.4th at 862; *Zaya v. Sood*, 836 F.3d 800, 807 (7th Cir. 2016) ("By itself an expert's assessment that a treatment decision was unreasonable is not enough to establish a conscious disregard of a known risk."); *Dean*, 18 F.4th at 241 (treating physician was not deliberately indifferent, even if other professionals would have handled the situation differently); *Petties*, 836 F.3d at 729 ("[E]vidence that *some* medical professionals would have chosen a different course of treatment is insufficient to make out a constitutional claim.")

Because the only evidence that Plaintiff points to is that other doctors would have taken a different approach, he fails to show that Dr. Dominguez's decision to order x-rays and pursue a conservative treatment plan before an MRI was "such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible did not base the decision on such a judgment." *Duckworth v. Ahmad*, 532 F.3d 675, 682 (7th Cir. 2008).

And there's even more evidence that Dr. Dominguez was not indifferent to Plaintiff's medical needs. When Dr. Dominguez believed Plaintiff was not responding to her treatment plan, she exercised her medical judgment and referred Plaintiff to Dr. Chamberlain for further evaluation. A reasonable jury cannot find that Dr. Dominguez's recognition that Plaintiff's medical needs reached a point that was beyond her professional capabilities and referring him to another doctor approached "a total unconcern for the prisoner's welfare" *Rasho*, 22 F.4th at 710; *Pyles*, 771 F.3d at 411 (the choice whether to refer a prisoner to a specialist involves the exercise of medical discretion.)

Because Plaintiff has failed to show that Dr. Dominguez was deliberately indifferent to his medical needs, Dr. Dominguez's motion for summary judgment is granted.

**Defendant Smith**

Plaintiff claims that Defendant Smith acted with deliberate indifference in the scheduling of Plaintiff's appointment at UIC's orthopedic clinic because she knew an appointment was urgent and nonetheless failed to schedule the appointment in a timely manner and her indifference is the cause of the almost seven months lapse between the time the medical order was issued and when Plaintiff had his appointment. Third. Am. Compl. ¶¶ 59–61. Although there were clearly delays in Plaintiff being seen by UIC's orthopedic clinic, Plaintiff fails to provide the necessary evidence that could lead a reasonable jury to establish § 1983 liability against Smith.

15

First, there is no evidence that Smith's actions or inactions caused any of the delays. Inmate appointments at UIC are scheduled by UIC's own scheduler and appointments at UIC's orthopedic department can take months to occur regardless of whether a patient is an inmate or not. Wex. D. SOF, ¶¶ 75, 78. Smith can only be liable if she had control over the circumstances that caused the delays and the evidence clearly shows that Smith had no control of when UIC saw Plaintiff, therefore Smith is not liable under § 1983. *Walker v. Wexford Health Sources, Inc.*, 940 F.3d 954, 966 (7th Cir. 2019).

Second, Plaintiff must show that Smith was directly and personally responsible for the delay in his appointment with UIC to find her liable under § 1983. *Kuhn*, 678 F.3d at 555–56; *Vance v. Peters*, 97 F.3d 987, 991 (7th Cir. 1996) ("Section 1983 creates a cause of action based on personal liability and predicated upon fault; thus, liability does not attach unless the individual defendant caused or participated in a constitutional deprivation.") Plaintiff argues that there is no record of when Smith processed Plaintiff's appointment order and claims this is evidence that Smith could have been deliberately indifferent in scheduling his appointment. But Plaintiff provides no support for this claim besides speculation and conjecture, which is not enough to defeat summary judgment. *Boston*, 816 F.3d at 466.

Because there is no evidence that Smith was personally responsible for UIC scheduling Plaintiff seven months after his medical order was issued, Smith is saved from liability here. *Ortiz*, 94 F.3d at 1124; *Brazkinski*, 6 F.3d at 1183 (the

16

moving party "can prevail just by showing that the other party has no evidence on an issue on which that party has the burden of proof.") Therefore, Smith's motion for summary judgment is granted.

**Wexford Health Source, Inc.**

Plaintiff claims that Wexford should be held liable under § 1983 for violating his constitutional rights by virtue of its practices and policies that led to poor medical care and a delay in accurately diagnosing the source of his right shoulder pain.

The Seventh Circuit applies the theory of municipal liability announced in *Monell v. Department of Social Services*, 436 U.S. 658 (1978), in § 1983 claims brought against private companies acting under color of state law. *Walker*, 940 F.3d at 966. To prevail, the "plaintiff must always show that 'he was deprived of a federal right.'" *Dean*, 18 F.4th at 235 (quoting *First Midwest Bank ex rel. LaPorta v. City of Chi.*, 988 F.3d 978, 986 (7th Cir. 2021)). The three types of municipal action that can support municipal liability under § 1983 are: "(1) an express policy that causes a constitutional deprivation when enforced; (2) a widespread practice that is so permanent and well-settled that it constitutes a custom or practice; or (3) an allegation that the constitutional injury was caused by a person with final policymaking authority." *Bohanon v. City of Indianapolis*, 46 F.4th 669, 675 (7th Cir. 2022) (quoting *Spiegel v. McClintic*, 916 F.3d 611, 617 (7th Cir. 2019)). Next, the plaintiff must show that a policy or custom demonstrates deliberate indifference. *Id.* The municipal action must also be the moving force behind the

17

federal-rights violation. *LaPorta*, 988 F.3d at 987. This is a rigorous causation standard that requires a direct causal link between the challenged municipal action and the constitutional rights violation *Id*. A *Monell* claim cannot be based on respondeat superior. *See Woodward v. Corr. Med. Servs. of Ill., Inc.*, 368 F.3d 917, 927 (7th Cir. 2004).

Wexford argues that Plaintiff cannot establish a claim for *Monell* liability because he has not produced evidence that satisfies any of the prongs for *Monell* liability set forth by the Seventh Circuit. First, Wexford argues that Plaintiff cannot satisfy the first prong because Wexford does not have an express policy that is facially unconstitutional, nor is there evidence of any policy that caused a violation of his rights. Plaintiff does not argue that Wexford's policy was facially unconstitutional, nor does he provide any evidence that it was obvious to Wexford that its policy of not treating undiagnosed medical issues or being skeptical about medical issues presented by prisoner patients would lead to constitutional violations, and therefore does not meet the standard for the first type of municipal liability. *LaPorta*, 988 F.3d at 987 (when a policy is not facially unconstitutional a plaintiff "must prove that it was obvious that the municipality's action would lead to constitutional violations and that the municipality consciously disregarded those consequences."); *Bohanon,* 46 F.4th at 675 ("[W]here the plaintiff does not allege that the municipality's action was facially unconstitutional but merely alleges that the municipality caused an employee to violate a federal right, a 'rigorous standard of culpability … applie[s] to ensure that the municipality is not held liable solely for

the actions of its employee.'") (quoting *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 404–05 (1997)).

Next, Wexford argues that there is no evidence that a Wexford policymaker violated Plaintiff's constitutional rights or had any involvement in his medical treatment. The Court agrees with Wexford. Taking the facts in the light most favorable to Plaintiff, he fails to present any evidence that anyone with final policymaking authority from Wexford made any decisions related to his medical treatment. Dr. Dominguez was the only Wexford employee who had decision making authority, but that is not enough to show that she was the final policymaker. *Whiting v. Wexford Health Sources, Inc.*, 839 F.3d 658, 664 (7th Cir. 2016) (citing *Valentino v. Village of South Chi. Heights*, 575 F.3d 664, 675 (7th Cir. 2009)); *see also Hill v. Cook*, Case No. 05 C 586, 2007 U.S. Dist. LEXIS 18962, at *10 (N.D. Ill. Mar. 19, 2007) ("A final policymaker is not the same as a final decisionmaker for the purpose of municipal liability under § 1983."). Therefore, Plaintiff fails to establish that a constitutional violation was caused by someone from Wexford with final policymaking authority to establish *Monell* liability.

That leaves Plaintiff with one last theory to establish *Monell* liability; that there was a widespread practice that, although not authorized by written or express Wexford policy, is so permanent and well settled that it can be considered a Wexford custom. *Bohanon,* 46 F.4th at 675. To establish a widespread practice or custom claim, Plaintiff must provide evidence that the practice or custom impacted other inmate patients, not just his own medical care and treatment. *Hildreth v. Butler*, 960

19

F.3d 420, 426 (7th Cir. 2020). Although it is not impossible for a plaintiff to show a widespread practice or custom with evidence limited to his personal experience, he must show that there is "a true municipal policy at issue, not a random event." *Grieveson v. Anderson*, 538 F.3d 763, 774 (7th Cir. 2008).

The only evidence that Plaintiff presents to establish his widespread practice and custom claim is the 2014 *Lippert* Report (2014 Report) and its findings. Plaintiff argues that the 2014 Report shows that Wexford had notice and knowledge that its policies and procedures were constitutionally inadequate. This Court in *Williams v. Wexford Health Sources, Inc.*, has found the 2014 Report to be inadmissible hearsay and excluded it under Fed. R. Evid. 403. *Williams v. Wexford Health Sources, Inc.*, 2022 U.S. Dist. LEXIS 163835 (N.D. Ill. Sep. 12, 2022). Like in *Williams*, Wexford asserts that Plaintiff is attempting to use the 2014 Report for show the truth of the matter asserted, but Plaintiff asserts that he is only using the 2014 report to show that Wexford had notice, though he does not clarify what issue Wexford purportedly was on notice of. And it is not the Court's job to do so. *See Conwell v. Johnsen*, No. 12-cv-10062, 2016 U.S. Dist. LEXIS 155869, at *78 n.11 (N.D. Ill. Nov. 9, 2016). The Court sees no reason to deviate from its finding in *Williams* and similarly finds that the 2014 Report is inadmissible evidence and cannot be considered at summary judgment. *Stinnett v. Iron Works Gym/Executive Health Spa, Inc.*, 301 F.3d 610, 613 (7th Cir. 2002) (evidence considered at summary judgment must be "admissible content.") Because this is the only evidence that Plaintiff presents to show that his own experience was a "true municipal policy, and not a random event", he fails to

establish *Monell* liability based on a widespread practice or custom claim. *Grieveson,* 538 F.3d at 774. Wexford's motion for summary judgment is therefore granted.

## B. Breach of Contract

Plaintiff claims that Wexford breached its duty under its contract with IDOC to provide quality healthcare to all prisoners in IDOC custody, and claims he is a third-party beneficiary of the contract and therefore has standing to sue under Illinois law. Wexford, however, argues that Plaintiff has not presented any evidence that the contract was breached, and, regardless, the express language of the IDOC-Wexford contract explicitly disavows any third-party beneficiaries.

Illinois law identifies two types of third-party beneficiaries—intended and incidental. *Rawoof v. Texor Petroleum Co.*, 521 F.3d 750, 758–59 (7th Cir. 2008). Unlike an incidental beneficiary, who has no rights under a contract, "[a]n intended beneficiary is intended by the parties to the contract to receive a benefit for the performance of the agreement and has rights and may sue under the contract…" *Id.* "There is a strong presumption against creating rights in a third-party beneficiary. To overcome this presumption the intent to benefit a third-party must affirmatively appear from the language of the contract and the circumstances surrounding the parties at the time of execution." *Wallace v. Chi. Housing Auth.*, 298 F. Supp. 2d 710, 724 (N.D. Ill. 2003). Express language in the contract identifying the third-party beneficiary is the best evidence of intent to benefit that party. *Quinn v. McGraw-Hill Cos.*, 168 F.3d 331, 334 (7th Cir. 1999).

21

In this case, the IDOC-Wexford contract explicitly states an intent to have no third-party beneficiaries to the contract. Wex. D. SOF, ¶ 80. This contractual provision negates Plaintiff's claim that the contract intended to benefit anyone other than its parties. Because Plaintiff has not provided any evidence to support his asserted third-party beneficiary status, Plaintiff lacks standing to sue under the IDOC-Wexford contract. *Larue v. Mills*, 2019 U.S. Dist. LEXIS 117348 at *17 (N.D. Ill. July 15, 2019) (finding inmate-plaintiff was only an incidental beneficiary under the IDOC-Wexford contract); *Flournoy v. Ghosh*, 2010 U.S. Dist. LEXIS 41774, at * 9 (N.D. Ill. Apr. 27, 2010) (finding that an individual who received treatment from Wexford is an incidental beneficiary who may not sue under the IDOC-Wexford contract). Because the language of the contract is clear, Wexford's summary judgment motion is granted.

## 4. CONCLUSION

For these reasons, the motions for summary judgment by the Illinois Defendants and the Wexford Defendants are granted.

The Court takes the opportunity to thank Attorney Jerome Pinderski for his work on this action. The Court greatly appreciates his efforts throughout this lengthy case and understands the burden that assignments of these cases place on counsel, especially counsel from smaller firms. Thank you, Mr. Pinderski.

Date: December 15, 2022

                                                 Honorable Iain D. Johnston
                                              United States District Judge